## EXHIBITS ATTACHED TO DECLARATION OF
## JILL R. SHELLOW

Exhibit A                    Judgment, Jul. 15, 2010

Exhibit B                    Transcript of Proceedings, Oct. 16, 2006 (excerpt)

Exhibit C                    BOP Locator release date estimate

Exhibit D                    U.S. Supreme Court Docket, *Lynne Stewart v. United States*,
                             Case No. 12-8891

Exhibit E                    Michael L. Grossbard, M.D., letters, Feb. 28, 2006 and
                             Jun. 28, 2006

Exhibit F                    Summary of Medical Records

Exhibit G                    Selected Radiology Reports; Pathology Reports; Reports
                             by the Center for Cancer and Blood Disorders; and
                             Health Services – Clinical Encounter – Administrative
                             Notes

Exhibit H                    Michael L. Grossbard, M.D., letter Jul. 26, 2013

Exhibit I                    Michael L. Grossbard, *curriculum vitae*

Exhibit J                    Richard Dundy, M.D., letter Jul. 26, 2013

Exhibit K                    Richard Dundy, M.D., *curriculum vitae*

Exhibit L                    Lynne Stewart Application to Warden, FMC Carswell for
                             Compassionate Release, Apr. 12, 2013

Exhibit M                    BOP Memorandum from Kathleen M. Kenney,
                             Assistant Director/General Counsel to Jody R. Upton,
                             Warden, Federal Medical Center, Carswell, denying
                             compassionate release application, Jun. 24, 2013

Exhibit N                    Lynne Stewart letter to the Honorable John G. Koeltl,
                             July 2013

# EXHIBIT A

Case 1:02-cr-00395-JGK   Document 1041   Filed 07/29/10   Page 1 of 5

℁AO 245B    (Rev. 06/05) Judgment in a Criminal Case
            Sheet 1

# UNITED STATES DISTRICT COURT

| SOUTHERN | District of | NEW YORK |
|---|---|---|

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **V.** | |
| LYNNE STEWART | |

Case Number:     S1 1:02CR00395-003 (JGK)

USM Number:     53504-054

JILL R. SHELLOW
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

X was found guilty on count(s)     ONE, FOUR, FIVE, SIX AND SEVEN OF THE SUPERCEDING INDICTMENT
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 371 | CONSPIRACY TO DEFRAUD THE UNITED STATES | 4/30/2002 | 1 |
| 18 USC 371 | CONSPIRACY TO PROVIDE MATERIAL SUPPORT TO TERRORIST ACTIVITY | 4/30/2002 | 4 |
| 18 USC 2339A | PROVIDE AND CONCEAL MATERIAL SUPPORT TO TERRORIST ACTIVITY | 4/30/2002 | 5 |
| 18 USC 1001 | FALSE STATEMENTS | 5/31/2000 | 6 |
| 18 USC 1001 | FALSE STATEMENTS | 5/31/2001 | 7 |

The defendant is sentenced as provided in pages 2 through _____5_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

X Count(s)    ALL OPEN COUNTS              ☐ is    X are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

JULY 15, 2010
Date of Imposition of Judgment

*(signature)*
Signature of Judge

JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE
Name and Title of Judge

7/28/10
Date

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/29/2010

AO 245B     (Rev. 06/05) Judgment in Criminal Case
            Sheet 2 — Imprisonment

| | | Judgment — Page ___2___ of ___5___ |
| --- | --- | --- |

DEFENDANT:         LYNNE STEWART'
CASE NUMBER:       S1 1:02CR00395-003 (JGK)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

120 MONTHS, TO BE IMPOSED AS FOLLOWS: 120 MONTHS ON COUNT 5, AND 60 MONTHS ON COUNTS 1, 4, 6 AND 7, ALL TO RUN CONCURRENTLY.

THIS IS A RESENTENCE OF THE DEFENDANT, WHO WAS ORIGINALLY SENTENCED ON OCTOBER 16, 2006.

X    The court makes the following recommendations to the Bureau of Prisons:
     1) That the defendant be incarcerated at FCI Danbury, CT, so that she can be close to her family.  2) That the defendant be designated Care Level 2 by the Bureau of Prisons and, to the extent possible, her care continue to be monitored by Dr. Glover.  3) That the defendant continue to be held at the Metropolitan Correctional Center, NY, for 60 days to allow her to participate in the preparation of any appeals, and that she continue to be held there during the briefing of any appeal if any appeal is taken.

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at _____ ☐ a.m.  ☐ p.m.   on _____ .

    ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. _____ .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 1:02-cr-00395-JGK  Document 1041  Filed 07/29/10  Page 3 of 5

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
            Sheet 3 — Supervised Release

|  |  | Judgment– Page   3   of   5 |
|---|---|---|

DEFENDANT:        LYNNE STEWART
CASE NUMBER:      S1 1:02CR00395-003 (JGK)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

2 YEARS TO RUN CONCURRENTLY ON COUNTS ONE, FOUR, FIVE, SIX AND SEVEN.

 The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

X     The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of
       future substance abuse.  (Check, if applicable.)

X     The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

X     The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐     The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a
       student, as directed by the probation officer.  (Check, if applicable.)

☐     The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

 If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

 The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of
     each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other
     acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any
     controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a
     felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any
     contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the
     permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal
     record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the
     defendant's compliance with such notification requirement.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __4__ of __5__

DEFENDANT:          LYNNE STEWART
CASE NUMBER:        S1 1:02CR00395-003 (JGK)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 500.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |
| **TOTALS** | $                0 | $                0 |  |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

---

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

Judgment — Page   5   of   5

DEFENDANT:        LYNNE STEWART
CASE NUMBER:   S1 1:02CR00395-003 (JGK)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $ _____ due immediately, balance due

     ☐   not later than _____ , or
     ☐   in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   X   Special instructions regarding the payment of criminal monetary penalties:
    –THE SPECIAL ASSESSMENT SHALL BE DUE IMMEDIATELY.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# EXHIBIT B

6AG5SAT1                         sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

    UNITED STATES OF AMERICA,
3
                    v.                          S1 02 Cr. 395 (JGK)
4
    AHMED ABDEL SATTAR, a/k/a "Abu Omar,"
5   a/k/a "Dr. Ahmed," LYNNE STEWART,
    and MOHAMMED YOUSRY,
6
                         Defendants.
7   ------------------------------------x

                                        October 16, 2006
8                                       10:30 a.m.

9

10
    Before:
11                  HON. JOHN G. KOELTL

12                                      District Judge

13                         APPEARANCES

14
    MICHAEL J. GARCIA
15       United States Attorney for the
         Southern District of New York
16  ROBIN BAKER
    ANDREW DEMBER
17  IRIS LAN
         Assistant United States Attorneys
18
    KENNETH A. PAUL
19  BARRY M. FALLICK
         Attorneys for Defendant Sattar
20
    JOSHUA L. DRATEL
21  ELIZABETH M. FINK
    SUSAN JORDAN
22  JILL R. SHELLOW-LAVINE
    ELLEN YAROSHEFSKY
23       Attorneys for Defendant Stewart

24  DAVID A. RUHNKE
    DAVID STERN
25       Attorneys for Defendant Yousry

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

6AGSSAT6

1        May we have until Monday to submit that to the court?

2        THE COURT:  Yes.  It should be given to the government

3   also to see if there is any problem with it.

4        MR. DRATEL:  Yes, your Honor, thank you.

5        THE COURT:  All right.

6        I adopt the findings of fact in the Pre-Sentence

7   Report except as I have already noted and except as I will

8   explain below.

9        I turn now to the arguments of the parties in

10  connection with the calculation of the advisory sentencing

11  guidelines range in this case together with any suggested

12  departures.  I will then turn to the analysis under 18 U.S.C.

13  Section 3553(a).

14        Defendant Stewart objects to the application of the

15  terrorism enhancement in Section 3A1.4 on the grounds that her

16  conduct does not fall within the heartland of the enhancement

17  and therefore should not be applied.  I have already explained

18  the structure of the enhancement in connection with Mr.

19  Sattar's sentence and I adopt that discussion here.  I also

20  adopt my explanation of why the enhancement should be applied

21  to both groups of offenses as described in the Pre-Sentence

22  Report, an issue that none of the parties had contested.

23        With respect to Ms. Stewart, the enhancement applies

24  because the offense of which she was convicted in Count 5,

25  providing and concealing material support to terrorist activity

6AGSSAT6

1   in violation of Section 2339(A), involved a federal crime of

2   terrorism, namely, Section 2339(A), which is a specifically

3   enumerated crime in 2332(b)(g)(5), and the crime of which she

4   was convicted in Count 4, conspiracy to violate Section

5   2339(A), was intended to promote a federal crime of terrorism,

6   namely, Section 2339(A) and Section 956, both of which are

7   specifically enumerated crimes in 2332(b)(g)(5).  The defendant

8   does not specifically challenge the literal application of the

9   guidelines, but her papers could be read as an argument that

10  her actions were not calculated to influence or affect the

11  conduct of government by intimidation or coercion, or to

12  retaliate against government conduct as required by

13  2332(b)(g)(5)(A).  She argues that her actions were all part of

14  the zealous representation of her client Sheikh Omar Abdel

15  Rahman.  But some of her papers could in fact be read as a

16  concession that her actions were calculated to influence or

17  affect the conduct of government.  The thrust of part of her

18  argument is that her actions were calculated to influence or

19  affect the conduct of the governments of the United States and

20  Egypt such that Sheikh Omar Abdel Rahman would be returned to

21  Egypt even if still in custody.  Hence, in her affirmation

22  submitted with her reply papers, Ms. Stewart affirms that "My

23  actions were intended only to foster the possibility that my

24  client might one day be able to return to Egypt, even as a

25  prisoner of the current regime or one akin to it."  Letter of

6AGSSAT6

1    Lynne Stewart dated September 26, 2002 at page 5.  However,

2    there was in fact ample evidence to show that the defendant's

3    actions were calculated to affect the conduct of the Egyptian

4    government through intimidation and coercion.   Indeed, the jury

5    found that the defendant possessed the specific intent to

6    provide Abdel Rahman as a co-conspirator in a conspiracy to

7    kill.   The court has summarized some of the evidence in the

8    decision denying the defendant's motion for a judgment of

9    acquittal, originally made at the conclusion of the

10   government's case, and it's unnecessary to repeat it here.   The

11   evidence at trial supports the conclusion that the defendant

12   violated the SAMs, smuggled terrorism messages to and from

13   Sheikh Abdel Rahman, and twice issued his withdrawal of support

14   for a cease fire which had otherwise called a halt to violence

15   by the Islamic Group against the Egyptian government in order,

16   at the very least, to have him transferred to Egypt or

17   released.   See Sattar, 395 F.Supp. 2d at 93 to 99; see also

18   Government Exhibit 9, 524, 554XT, 1706X at 27 to 32; 1707X at

19   27 to 36.   The defendant conduct cannot be found to be outside

20   the heartland of the enenhancement, but the court will take all

21   of the defendant's arguments into account in performing the

22   analysis under Section 3553(a).

23          The defendant also argues that the criminal history

24   category 6 required by the terrorism enhancement overstates the

25   seriousness of the defendant's past conduct or the likelihood

6AGSSAT6

1   that the defendant will commit further crimes.   There is merit

2   to this argument and it is a basis for a downward departure

3   which the Court of Appeals recognized in United States against

4   Meskini, 319 F.3d 88, 92 (2d Cir. 2003).   This is one of the

5   rare cases where it makes sense to consider the extent of the

6   departure in the context of the Section 3553(a) factors rather

7   than making an individual determination of the amount of the

8   departure appropriate solely for the overly enhanced criminal

9   history category for the terrorism enhancement.   See the United

10   States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005).

11       The defendant submission could be read as not arguing

12   specific departures from the guidelines, but relying on

13   language in Crosby simply asking the court to apply a

14   non-guideline sentence.   See defendant's memo at 12.   However,

15   the court will consider the guidelines and any requests for

16   departures for enhancements before turning to the Section

17   3553(a) factors.

18       The defendant argues that her conduct comes within

19   Section 5K2.11 and warrants a departure.   The court recognizes

20   it's ability to depart under that section but the defendant's

21   conduct does not fall within the scope of that departure.   With

22   respect to the first paragraph of that policy statement, the

23   departure does not apply because the circumstances of this case

24   do not diminish society's interest in punishing the conduct at

25   issue.                       (Continued on next page)

6AG5SAT5                       sentencing

1          THE COURT:  This is not a case where the interest in

2    punishment or deterrence is reduced.  With respect to the

3    second paragraph, it cannot be said that the defendant's

4    conduct did not cause or threaten the harm sought to be

5    prevented by the statutes that the defendant violated.

6          The defendant points to her medical condition, in

7    particular the fact that she was treated for breast cancer,

8    underwent an operation and radiation therapy and is continuing

9    to take medication for her condition.

10         The Court is aware of its ability to depart based on

11   extraordinary medical conditions under Section 5H1.4.  This is

12   a condition that the Court will take into account in making the

13   determination under Section 3553(a), and the Court therefore

14   does not have to reach the question of whether the defendant's

15   medical condition, given her age and continuing treatment, is

16   sufficient in itself to warrant a departure from the

17   guidelines.

18         The defendant also contends that her conduct was

19   aberrational and the Court is aware of its ability to

20   downwardly depart on this basis under Section 5K2.20 of the

21   guidelines.  The Court chooses not to exercise its discretion

22   under this departure because the defendant's conduct was

23   committed over an extended period of time, involved repeated

24   acts of deception, and involves significant planning.

25         The government argues that there should be an

6AG5SAT5                    sentencing

1   enhancement of two levels under Section 3C1.1 for obstruction

2   of justice based on the defendant's alleged trial perjury.  The

3   Court has already reviewed the standards for this enhancement

4   in connection with Mr. Sattar's sentence and incorporates that

5   discussion here.

6           The government asserts that there are two grounds for

7   the enhancement.  First, the government contends that

8   Ms. Stewart knowingly gave false testimony when she testified

9   that she understood that there was a bubble built into the SAMs

10  whereby the attorneys could issue press releases containing

11  Abdel Rahman's statements as part of their representation of

12  him.  Transcript 7717, 7832, 7880 to 81.

13          The government also contends that Ms. Stewart

14  testified falsely when she denied knowing who Taha was until

15  learning about him in the course of the trial except for an

16  article that she came across in her representation of Yasir

17  Ahmed.  Transcript, 7650, 7738, 7791.

18          There is evidence to indicate that these statements

19  were false statements but it is unnecessary to reach whether

20  the defendant knowingly gave false testimony with the intent to

21  obstruct the proceedings.  First, the guidelines calculation

22  already provided for the statutory maximum permitted by the

23  statutes of conviction.  Second, consistent with the Court of

24  Appeals' decision in Crosby, this Court has determined that a

25  nonguideline sentence is reasonable and most consistent with

6AG5SAT5                          sentencing

1    the factors set forth in Section 3553(a).

2              Therefore, the total offense level is 41, the Criminal

3    History Category is VI, and the guideline sentencing range

4    using the November 2000 guidelines is 360 months, the statutory

5    maximum.

6              The government seeks the statutory maximum.  That is

7    the guideline sentencing range.  Although the government did

8    not make it clear at the sentencing hearing today, the

9    government's position is that the defendant should be sentenced

10   to a term of life.

11             The defendant seeks a non-guideline sentence that

12   imposes no incarceration.

13             There is no presumption, rebuttable or otherwise, that

14   a guideline sentence is reasonable.  See, United States v.

15   Fernandez, 443, F.3d 19, 27, (2d Cir. 2006).  While treating

16   the guidelines as a benchmark or point of reference, there are

17   no per se rules with respect to the reasonableness of a

18   sentence.  United States v. Rattabolli, 452 F.3d 127, 133, (2d

19   Cir. 2006).  The Court must articulate factors that are

20   personal to a particular defendant.  Id.; see also United

21   States v. Jones, 460 F.3d 191, (2d Cir. 2006).  The Court must

22   consult all of the factors in 18 U.S.C. Section 3553(a) and

23   impose a sentence that is sufficient but no greater than

24   necessary to comply with the purposes of Section 3553(a)(2).

25   The Court adopts the discussion of those statutory purposes as

6AG5SAT5                          sentencing

1    it explained them in connection with Mr. Sattar.

2              In this case there are numerous factors that argue in

3    favor of a very substantial downward variance.  Initially, this

4    is an atypical case for the terrorism enhancement.

5              The government's summary of other cases involving

6    violations of 18 U.S.C. Section 2339A, or conspiracy to violate

7    Section 2339A, indicates that there are few, if any cases,

8    where the thrust of the violation was the provision of a

9    co-conspirator to a terrorist conspiracy.

10             Moreover, as pointed out with respect to Mr. Sattar,

11   there is no evidence that any victim was in fact harmed as a

12   result of the offense as charged, a factor that the guidelines

13   would otherwise take into account.

14             The increase in the Criminal History Category from I

15   to VI as a result of the terrorism enhancement is also

16   dramatically unreasonable in the case of Ms. Stewart.  The

17   Court incorporates the legal analysis already discussed with

18   respect to Mr. Sattar.  With respect to the facts of

19   Ms. Stewart's case, her Criminal History Category VI overstates

20   the seriousness of the defendant's past conduct and the

21   likelihood that the defendant will repeat the offense.

22             With respect to the defendant's past conduct, the

23   defendant has no criminal history and yet is placed in the

24   highest criminal history category equal to that of repeat

25   felony offenders for the most serious offenses including murder

6AG5SAT5                          sentencing

1    and drug trafficking.

2          The Court of Appeals has recognized in <u>Meskini</u> that

3    the high Criminal History Category can be appropriate because

4    of the likelihood of recidivism, the difficulty of

5    rehabilitation and the need for incapacitation.   <u>Meskini</u>, 319

6    F.3d at 92.   That is not this case.   The defendant will lose

7    her license to practice law.   She will be forever separated

8    from any contact with Sheikh Omar Abdel Rahman and the occasion

9    for the crimes to which she has been convicted will be nil.

10         Without the terrorism enhancement, the guideline

11   sentencing range, without an enhancement for obstruction, would

12   be 28, based on the Group 2 offenses, and, with a Criminal

13   History Category of I, the guideline sentencing range would be

14   78 to 97 months.   Group 1 would not be counted because it would

15   be more than eight levels less than Group 2.   Even with an

16   obstruction enhancement, the guideline range would be 97 to 121

17   months.

18         The effect of the terrorism enhancement, while correct

19   under the guidelines, would result in an unreasonable result in

20   this atypical case and produce a guideline range about

21   quadruple the range without that enhancement.   And the

22   guideline range without the terrorism enhancement is before

23   taking into account the extraordinary personal characteristics

24   of the defendant which also argue strongly in favor of a

25   substantial downward variance.

6AG5SAT5                    sentencing

1        The personal characteristics of the defendant are

2   intertwined with several of the factors under Section 3553 and

3   the Court of Appeals counseled in <u>Rattabolli</u> that a sentencing

4   Court should focus on characteristics unique or personal to an

5   individual defendant.  <u>Rattabolli</u>, 452 F.3d at 153.

6        The Court therefore turns to some of the personal

7   characteristics of the defendant.  The defendant is 67 years

8   old.  She was a teacher at inner city schools before becoming a

9   lawyer.

10       For over 30 years she has practiced law concentrating

11  on criminal law.  In the course of that practice, while she has

12  become well known and celebrated as an excellent lawyer, she

13  did not use the practice of law to earn personal wealth.  She

14  has represented the poor, the disadvantaged and the unpopular,

15  often as a Court-appointed attorney.

16       Indeed, she was appointed by the Court to represent

17  Sheikh Omar Abdel Rahman, and thus it was through initially

18  responding to a call for representation of a very unpopular

19  client that she became involved in the crimes of conviction.

20       Having spent her professional career often

21  representing the poor, she is now, at the end of her career,

22  financially destitute.

23       By providing a criminal defense to the poor, the

24  disadvantaged and unpopular over three decades, it is no

25  exaggeration to say that Ms. Stewart performed a public service

6AG5SAT5                    sentencing

1    not only to her clients but to the nation.

2         Criminal defense lawyers are an essential part of the

3    administration of justice and without them, a fair and just

4    system and the guarantee of the Sixth Amendment could not

5    exist.  And as the hundreds of letters that the Court has

6    received attest, Ms. Stewart has performed that role with

7    enormous skill and dedication.

8         This is not a case where a defendant has turned to

9    charity in response to an indictment.  Ms. Stewart built a

10   record of accomplishment over more than three decades.  Even

11   under the guidelines, while civic, charitable, public service,

12   employment-related contributions and similar prior good works

13   are not ordinarily relevant in determining whether a sentence

14   should be outside the guidelines range, extraordinary

15   contributions may take a defendant outside the guideline rage.

16   See, Section 5H1.11 and the policy statements that the

17   Guidelines are not even binding after <u>Booker</u>.

18        A substantial downward variance is warranted based on

19   Ms. Stewart's past work.

20        The fact that she will likely lose the ability to

21   practice law which has motivated and sustained her for more

22   than three decades, is itself a punishment.  But,

23   significantly, under Section 3553 it also means that the

24   occasion for her offenses will be removed and that a lengthy

25   sentence of imprisonment would be an excessive one that is

6AG5SAT5                         sentencing

1  sufficient but no greater than necessary to provide for

2  deterrence and protection of the public.

3          Ms. Stewart's other personal characteristics are also

4  relevant to the issue of sentence.  She is 67 years old and

5  imprisonment will be particularly difficult on her because of

6  her age.  Moreover, she has suffered from cancer and underwent

7  surgery and radiation therapy and is taking medication for the

8  condition now.

9          She has a statistically significant chance of

10  recurrence.  She suffers from other medical conditions

11  including sleep apnea.  Medical care can be delivered while in

12  prison but it is clear that prison will be particularly

13  difficult for this defendant.

14          While age and physical condition are discouraged

15  factors under the guidelines, see 5H1.1 and 5H1.4, they can be

16  considered in extraordinary cases and are certainly factors to

17  be taken into account after Booker in considering the various

18  factors under Section 3553(a).

19          Any sentence of imprisonment will be particularly

20  difficult for the defendant and will represent a greater

21  portion of her remaining life than for a younger defendant and

22  provide increased punishment for the defendant.  Because

23  imprisonment will be particularly hard on the defendant, a

24  lesser sentence than otherwise called for by the advisory

25  guidelines would be sufficient to accomplish the goals of

6AG5SAT5                          sentencing

1    Section 3553(a)(2).

2           But, having assessed the personal characteristics and

3    the strong arguments for substantial downward variance, there

4    is an irreduceable core of extraordinarily severe criminal

5    conduct.

6           Ms. Stewart abused her position as a lawyer to gain

7    access to Sheikh Omar Abdel Rahman while he was in prison and

8    used that access to smuggle messages to and from Sheikh Abdel

9    Rahman while he was in prison, and to make potentially lethal

10   public statements on his behalf in violation of the SAMs.

11          She lied to the government when she made her

12   affirmation under the SAMs to get access to Sheikh Rahman while

13   in prison, and, after being warned of the possible consequences

14   of her actions, she made another false affirmation to gain

15   access yet again and violated the affirmation yet again.  She

16   understood the potential seriousness of her conduct at the time

17   and acknowledged that she was putting her whole career at risk.

18   LS-701T at 5.

19          Even in her statement to the Court, Ms. Stewart

20   candidly acknowledges that, "The acts in violation of my SAMs

21   affirmation speaking to a reporter and allowing prohibited

22   communications were committed intentionally.  My only motive,

23   however, was to serve my client as a lawyer."  Stewart

24   September 26, 2006 letter at 2.

25          The Court is plainly aware of the numerous arguments

6AG5SAT5                    sentencing

1    made in the papers that the defendant's actions were simply

2    part of zealous advocacy.  However, the defendant's actions

3    plainly went beyond any reasonable bounds of zealous advocacy

4    and were knowing violations of the law.  The defendant is

5    entitled to great credit for a lifetime of dedicated service,

6    but that credit does not extend to the knowing violation of the

7    law.

8              Now is not the time to summarize all of the evidence

9    at trial.  I refer to some of it now only to point out that the

10   offenses of conviction were serious, involved dishonesty and

11   breach of trust, and had potentially lethal consequences which

12   did not, however, actually transpire.

13             One of the purposes that the Court must take into

14   account is to reflect the seriousness of the offense, to

15   promote respect for the law and to provide just punishment for

16   the offense.

17             The Court must impose a sentence sufficient to

18   accomplish this purpose as well as the other purposes under

19   Section 3553(a)(2).  The Court must also consider the nature

20   and circumstances of the offense as well as the history and

21   characteristics of the defendant.  But, the seriousness of the

22   offense does not wipe out the three decades of service and the

23   other characteristics of the defendant and the particular

24   effects of the sentence on this defendant that the Court has

25   already discussed.

6AG5SAT5                          sentencing

1          Ultimately, the sentence must be a reasonable one that

2   considers all of the factors under Section 3553(a) and is

3   sufficient but no greater than necessary to meet the purposes

4   under Section 3553(a)(2).

5          Taking all of the factors into account, the Court

6   determines that a sentence of 28 months' imprisonment is

7   sufficient but no greater than necessary to accomplish the

8   purposes of Section 3553(a)(2).

9          The sentence also does not result in unwarranted

10  sentencing disparities.  The Court has fashioned a sentence

11  that responds to the individual characteristics and history of

12  the defendant as well as the detail of the offenses of

13  conviction.

14         The Court has already compared the sentence to the

15  proposed sentencings of the other defendants in this case and

16  has concluded that there is no unwarranted sentencing disparity

17  even among co-defendants because of the individual personal

18  characteristics and roles played by each of the defendants.

19         The sentence will be imposed as follows:

20         28 months on each of Counts One, Four, Five, Six and

21  Seven, to run concurrently.

22         I will impose supervised release of two years to

23  follow imprisonment on Counts One, Four, Five, Six and Seven to

24  run concurrently with the standard conditions of supervised

25  release in this district and those recommended by the probation

6AG5SAT5                     sentencing

1   department.

2           I will not impose drug testing because the defendant

3   is a low-risk of substance abuse.

4           The Court will not impose a fine because the defendant

5   lacks the ability to pay a fine.

6           The Court will not impose an order of restitution

7   because there are no victims under 18 U.S.C. Section 3663.

8           The Court will impose a $500 special assessment.

9           The Court would also allow voluntary surrender as

10  recommended by the probation department but the Court is also

11  inclined to order bail to be continued pending appeal if, as

12  the Court assumes, the defendant files a notice of appeal and

13  the defendant seeks bail pending appeal.

14          The Court will certainly prepare to listen to the

15  parties on this, but the Court has received Mr. Ruhnke's letter

16  on behalf of Mr. Yousry and has considered the arguments in

17  that letter; it has also considered the fact that Mr. Ruhnke

18  advises that the government opposes bail pending appeal.  And,

19  in the various submissions for Ms. Stewart, Mr. Tigar's letter

20  refers to the fact that his letter is also a letter in support

21  of bail pending appeal.

22          So, I'm confident that this is an issue that has been

23  considered and if the parties wish to address it, I have

24  considered the arguments and I'm prepared to listen if there is

25  opposition.

6AG5SAT5                           sentencing

1              Yes, Ms. Baker.

2              MS. BAKER:  Your Honor, the government agrees with the

3    legal standards as set forth in Mr. Ruhnke's letter and we

4    would submit to the Court that the various requirements are not

5    met, in particular that there is not a substantial question of

6    law or fact likely to result in a reversal or an order for new

7    trial or a sentence not including any term of imprisonment and,

8    in addition, that the requisite exceptional circumstances are

9    not present here -- or, exceptional reasons -- I guess is the

10   precise wording of the statute.

11             I assume that the Court has already considered those

12   specific factors and disagrees.  I would ask that the Court set

13   forth its particular findings on those issues so that the

14   government can consider whether any appropriate relief might be

15   sought.

16             THE COURT:  Of course.  I welcome review.  Now, I'm

17   not -- I should certainly listen to Ms. Stewart's counsel who

18   may wish to add to what Mr. Ruhnke has already said on behalf

19   of Mr. Yousry but, as I say, I am --

20             MS. FINK:  Judge, can I just be heard on your sentence

21   for a second?

22             THE COURT:  Let me put it this way.

23             MS. FINK:  Okay, I just want to ask you to put a

24   condition --

25             THE COURT:  Let me put off, until I have finally

6AG5SAT5                    sentencing

1   announced and imposed the sentence, the issue of bail pending

2   appeal and listen to the parties on that.  All right?

3           So, I have indicated to you what my proposed sentence

4   is.  I have explained the reasons for the sentence.  Before I

5   actually impose the sentence I will listen to defense counsel

6   for any statement that defense counsel wishes to make.

7           MS. FINK:  Judge, I would ask you to order, as part of

8   the sentence, that follow-up medical tests be given so that we

9   can come back to you.

10          THE COURT:  I believe that when I deal with the Bureau

11  of Prisons it is a recommendation, and I am perfectly prepared

12  to make that recommendation.

13          MS. FINK:  Would you put it in the form of an order if

14  we submitted an order for you?

15          THE COURT:  I believe that in terms of the conditions

16  of sentence to the Bureau of Prisons it's recommendations and I

17  will do that in the judgment.

18          MS. FINK:  And of course, Judge, we would ask that

19  Ms. Stewart be incarcerated at the federal correctional

20  institution at Danbury which is the closest facility.  There

21  are only a few women's prisons and Danbury is the closest

22  within I would say, 800 miles of the other ones, to New York

23  City.

24          THE COURT:  All right.  Before I -- anything else?

25          MS. FINK:  Anything else?

1      MR. DEMBER:  No.  Thank you, Judge.

2      THE COURT:  Before I impose the sentence, Ms. Stewart,

3 I will recognize you for anything you wish to tell me in

4 connection with sentence, any statement you would like to make

5 on your own behalf, anything at all you would like to tell me.

6      DEFENDANT STEWART:  Thank you, Judge.

7      THE COURT:  Before I actually impose the sentence I

8 will recognize the government for anything the government

9 wishes to tell me.

10      MR. DEMBER:  Your Honor, the government just objects

11 to a non-guideline sentence.

12      THE COURT:  Okay.

13      Pursuant to the Sentencing Reform Act of 1984, it is

14 the judgment of this Court that the defendant, Lynne Stewart,

15 is hereby committed to the custody of the Bureau of Prisons to

16 be imprisoned for a term of 28 months on Counts One, Four,

17 Five, Six and Seven, to run concurrently.

18      I recommend incarceration at FCI Danbury, Connecticut

19 so that the defendant can be close to her family.

20      I recommend to the Bureau of Prisons that the

21 defendant receive medical testing and medical care for her

22 medical conditions.

23      Upon release from imprisonment, the defendant shall be

24 placed on supervised release for a term of two years on Counts

25 One, Four, Five, Six and Seven, to run concurrently.

6AG5SAT5                         sentencing

1        Within 72 hours of release from the custody of the

2   Bureau of Prisons, the defendant shall report, in person, to

3   the probation office in the district to which the defendant is

4   released.   On supervised release, the defendant shall comply

5   with the standard conditions of supervised release in this

6   district.

7        The defendant shall not commit another, federal, state

8   or local crime.

9        The defendant shall not possess a firearm or

10  destructive device as defined in 18 U.S.C. Section 921.

11       The defendant shall refrain from any unlawful use or

12  possession of controlled substance.

13       The defendant shall cooperate in the collection of

14  DNA, as recommended by the probation department.

15       It is further ordered that the defendant shall pay to

16  the United States a special assessment of $500, which shall be

17  due immediately.

18       I have already explained the reasons for sentence.

19  Does either counsel know of any legal reason why the sentence

20  should not be imposed as I have so stated it?

21       MR. DRATEL:   No, your Honor.

22       MR. DEMBER:   No, your Honor.

23       THE COURT:   I order the sentence to be imposed as I

24  have so stated it for all the reasons that I have explained.

25       Ms. Stewart, you have the right to appeal.   The notice

# EXHIBIT C

Federal Bureau of Prisons                                                Page 1 of 1

Home   Site Map   Contact Us


**Federal Bureau of Prisons**
An agency of the U.S. Department of Justice

Search _____ Website · [Go]

**About** | **Inmate Locator** | **Prison Facilities** | **Careers** | **Inmate Matters** | **Policy/Forms** | **Doing Business** | **News/Information**

**Inmate Locator**

‣ About the Inmate Locator

‣ Visiting - General Info
  - Visiting Hours
  - Who Can Visit?
  - Background Checks
  - Business Visits
  - Special Circumstances
  - Visiting Room Procedures
  - Conjugal Visits

‣ Locate Inmates Released
  Before 1982

‣ Who is a "Federal" Inmate?

Related Documents

## Inmate Locator - Locate Federal inmates from 1982 to present

| | Name | Register # | Age-Race-Sex | Release Date<br>Actual or Projected | Location |
|---|---|---|---|---|---|
| 1. | LYNNE IRENE STEWART | 53504-054 | 73-White-F | 08-27-2018 | CARSWELL FMC |

Results 1 - 1 of 1

New Search       FAQs       Privacy

About | Inmate Locator | Prison Facilities | Careers | Inmate Matters | Policy/Forms | Doing Business | News/Information

Accessibility | Browser Requirements | Disclaimer | DOJ Legal Policies | FOIA | No FEAR Act | Privacy Policy

# EXHIBIT D



# SUPREME COURT
OF THE UNITED STATES

No. 12-8891
Title:         Lynne Stewart, Petitioner
               v.
               United States
Docketed:      February 25, 2013
Linked with 12A588
Lower Ct:      United States Court of Appeals for the Second Circuit
  Case Nos.:   (10-3185)
  Decision Date: June 28, 2012
  Rehearing
Denied:        September 24, 2012

~~~Date~~~  ~~~~~~~Proceedings  and  Orders~~~~~~~~~~~~~~~~~~~~~~

Dec 7 2012   Application (12A588) to extend the time to file a petition for a writ of certiorari from
             December 23, 2012 to February 21, 2013, submitted to Justice Ginsburg.
Dec 11 2012  Application (12A588) granted by Justice Ginsburg extending the time to file until
             February 21, 2013.
Feb 21 2013  Petition for a writ of certiorari and motion for leave to proceed in forma pauperis
             filed. (Response due March 27, 2013)
Mar 22 2013  Order extending time to file response to petition to and including April 26, 2013.
Apr 23 2013  Order further extending time to file response to petition to and including May 28,
             2013.
May 28 2013  Brief of respondent United States in opposition filed.
Jun 13 2013  DISTRIBUTED for Conference of September 30, 2013.

~~Name~~~~~~~~~~~~~~~~~~~~         ~~~~~~~Address~~~~~~~~~~~~~~~~~~         ~~Phone~~~
**Attorneys for Petitioner:**
Jill R. Shellow                   111 Broadway, Suite 1305                 (212) 792-4911
                                  New York, NY  10006

Party name: Lynne F. Stewart
**Attorneys for Respondent:**
Donald B. Verrilli Jr.            Solicitor General                       (202) 514-2217
   Counsel of Record              United States Department of Justice
                                  950 Pennsylvania Avenue, N.W.
                                  Washington, DC  20530-0001
                                  SupremeCtBriefs@USDOJ.gov

Party name: United States