# EXHIBIT J

# FILED UNDER SEAL

# EXHIBIT K

Richard Dundy, M.D.
**[REDACTED]**
New York, NY 10034
E-mail: richard.dundy@vnsny.org

**Curriculum Vitae**

**Board Certifications:**

| | |
|---|---|
| 2004 | Diplomate<br>American Board of Hospice and Palliative Medicine |
| 1994 | Recertified, Diplomate<br>American Board of Emergency Medicine |
| 1984 | Diplomate<br>American Board of Emergency Medicine |
| 1979 | Diplomate<br>American Board of Internal Medicine |

**Hospital Appointments:**

| | |
|---|---|
| March 2007-present | Visiting Nurse Service of New York<br>Hospice and Palliative Care |
| December 2003-March 2007 | Medical Director, Jacob Perlow Hospice<br>Brooklyn, New York |
| Dec. 2002-Nov. 2003 | Fellow, Dept. of Pain Medicine and Palliative Care<br>Beth Israel Medical Center<br>New York, New York |
| 1997-2001 | Staff Physician, Urgent Care Division<br>New York University Health Center<br>Clinical Instructor, Medicine, NYU<br>New York, New York |
| 1986-1997 | Director, Emergency Department<br>Beth Israel Medical Center/North Division<br>New York, New York |
| 1984-1986 | Director, Emergency Department<br>Long Island College Hospital<br>Brooklyn, New York |
| 1983-1984 | Chief of Emergency Medicine<br>Lawrence Memorial Hospital<br>Medford, Massachusetts |
| 1980-1983 | Director, Emergency Department<br>Framingham Union Hospital<br>Framingham, Massachusetts |

| | |
|---|---|
| 1979-1980 | Staff Physician<br>Emergency Department<br>St. Barnabus Medical Center<br>Livingston, New Jersey |
| 1977-1979 | Medical Residency<br>Downstate Medical Center<br>New York, New York |
| 1974-1977 | Staff Physician<br>Division of Primary Care<br>Roosevelt Hospital<br>New York, New York |
| 1973-1974 | Rotating Internship<br>Wayne State University<br>Detroit General Hospital<br>Detroit, Michigan |

**Academic Appointments:**

| | |
|---|---|
| July 2004 | Assistant Professor of Family and Social Medicine<br>Albert Einstein College of Medicine |
| 1998-2001 | Clinical Instructor in Medicine, New York University School of Medicine |
| 1994-1997 | Assistant Professor, Albert Einstein College of Medicine |

**Education:**

| | |
|---|---|
| 1973 | Doctor of Medicine<br>State University of New York<br>Buffalo School of Medicine<br>Buffalo, New York |
| 1967 | Bachelor of Arts<br>Brandeis University<br>Waltham, Massachusetts |

**Foreign Languages:** Spanish, French

# EXHIBIT L



Warden
FMC Carswell

Dear Sir:

I am writing to you to ask the BOP to bring a motion on my behalf pursuant to 28 CFR Part 571.62 for Compassionate Release.

A. EXTRAORDINARY AND COMPELLING REASONS

1. I was designated to Carswell Federal Medical Center in 2010, because of my age (71) and my chronic disabilities. I was and am suffering from Diabetes, High Blood Pressure, and Breast Cancer (in remission from 2006) now full blown.

2. Prior to commitment to Prison I had been scheduled to have surgery repair work done on a prolapsed uterus. That was deferred after my arrival in jail for 18 months until June 2012. After I had a hysterectomy, my gynecologic surgeon at that time told me it was "the worst he had ever seen". Part of that was certainly due to the delay.

3. In 2006 I was diagnosed and treated for Breast Cancer at New York St. Luke's Hospital, New York. I had a lumpectomy followed by radiation and a five year prescription for Arimedex, an experimental protocol which starved any remaining cancer cells for female hormone.

4. The breast cancer was in remission until a chest X-ray taken in June 2012 was read and revealed some ominous patches on my lungs. I then had a PET scan and that showed both lungs were perhaps cancerous (Stage 4) and my lymph and a small spot on my scapula. There had been metastasis. A lymph biopsy was performed and chemotherapy was suggested by my oncologist, Dr. Ganessa. That began in late February of 2013, a delay that was unreasonable but not unknown at Carswell.

5. The chemo therapy treatments have required the surgical installation of a "Port" that allows direct administration of chemotherapy. I have had two of four treatments. The pre-requisite in the outside world for such treatment is consistent follow up, hands on care and optimal sanitary conditions, all virtually impossible to achieve or replicate in prison setting.

6. When I leave the prison for my treatments at the Center in Fort Worth and during the course of the chemo, I am shackled. A belly chain goes around my waist and is secured with hand cuffs. My ankles are shackled with a 24" chain to each other. I am not steady on my feet and the weight of the chains during the hours I endure them leaves me even weaker. It is my understanding that this shackling is incompatible with all protocols of decent medical care.

7. Dr. Zenobia Brown, our daughter, has concluded that my cancer and health conditions constitute a "battle of the most serious consequences with dangerous odds. With cancer and cancer treatment, the complications can be as debilitating as the cancer." I understand that Dr. Ganessa has given me a prognosis of 1 to 2 years.

8. In a prison setting the continuity of care is essential to surmount and to survive advanced cancer is precarious. This is not a hospital setting where doctors and specialists who diagnosed and attended to my condition can co-ordinate. Nor is it

possible for my Primary Care physician at Carswell to communicate with Dr. Ganessa. Finally, I have very limited if any direct communication with ANY of my caregivers. Prison does not permit any kind of call to report immediate problems. The prognosis above is extremely grave on an emergent and continuing basis.

9. After two Chemo treatments, I find myself tired all the time, have a lack of appetite and have little stamina. I spend most days napping. My memory etc. has also been affected by "chemo brain". I can't multi task and have trouble remembering. I have other minor pains and problems associated with the Chemo as well. I am able to care for myself (showers, laundry, room sanitation) with the help of the other women in my unit but it is far from an ideal situation for either them or me.

10. Compassionate release should be available to anyone diagnosed with a fatal disease. The law does not impose arbitrary time limits like a one year prognosis. That is strictly a bureaucratic facility of the Bureau of Prisons. Everyone deserves to have her case evaluated on the merits at the time that she learns that she is diagnosed with an incurable disease. In my case releasing me would enable me to live in the same household with my husband for primary care and my children (3) are all located within twenty minutes and would be secondary support. This setting would ensure me the nurture, love and critical care I so desperately require. If I am isolated from this supportive environment, the difficulties of surmounting and surviving this grave illness are virtually nil. The absence of an environment such as I have described have been devastating.

11. I also could receive cutting edge treatment. There are advancements every day in Cancer treatment and if I were home in New York City I can choose to have medical treatment continued at such state of the art institutions as Sloan Kettering. I receive treatment here under Dr. Ganessa but I am sure that even she would agree that Ft. Worth is not a leading center for cancer research.

12. That portion of the Sentencing Guidelines that provides for Compassionate Release calls for a sentence change where "extraordinary and compelling reasons obtain of which imminent and advanced life threatening illness is foremost." In these circumstances, I believe my grave health conditon and the requisite circumstances for survival meet every rationale and humane criterion for compassionate release.. If your standard of "imminent" is limited to a one year diagnosis, you ignore the 73 years of my prior life. That is not fair or right. My doctors have concluded that the sole hope of "recovery" demands treatment that is more methodical, rigorous and must be combined with essential care and emotional support. This is simply NOT possible in a prison setting.

13. In light of this abundant record of qualification, in meeting precisely the requirements Congress had in mind when it enacted the Compassionate Release in 1984 and the outrageous paucity of releases under law (New York Times Editorial, 12/3/12) I appeal to you to bring the appropriate motion to Judge Koeltl in the Southern District of New York. He remarked at time of sentencing that he did not want me to die in prison. Give him an opportunity to act on that promise.

II. PROPOSED RELEASE PLANS, INCLUDING WHERE THE INMATE WILL RESIDE, HOW THE INMATE WILL SUPPORT HERSELF, AND INFORMATION ON WHERE THE INMATE WILL RECEIVE MEDICAL TREATMENT AND HOW THE INMATE WILL PAY FOR SUCH TREATMENT.

14.. I shall be residing at the home of my son Geoffrey Stewart, a practicing attorney, and his wife, Marta at 30 Rugby Road in the Parade Grounds section of Brooklyn, New York. My husband and companion of more than 50 years, Ralph Poynter will be at my side and provide loving care. My children and grandchildren all reside in New York City and will also be available to help in any appropriate way. I will be surrounded by love and joy. My son's home is a single family restored three story Victorian and has a complete apartment with bath. I will have meals with his family or brought in from one of the many local restaurants.

15. I am retired and will support myself with my Social Security monthly payments. My husband will supply any additional required. I will receive medical treatment utilizing my daughter Dr. Zenobia Brown and my erstwhile oncologist, Dr. Michael Grosbard of St. Luke's NY Hospital. I will certainly be at Sloan Kettering, a leader in cancer treatment. All charges will be covered by Medicare. If there is a need all three of my children are professionals (two lawyers, one medical doctor) and would gladly do financially whatever they can for me.

In closing, I am asking that the Bureau of Prisons submit my application for compassionate release. "The quality of mercy is not strained". I am an elder and I have an incurable disease. What possible reason can there be to keep me in prison except to punish me? There are better penological goals.

Lynne Stewart

LS

cc Ms Peterson
SOC WKr
Mr. Hernandez AW
Ms Godfrey

NYT 12/5/12

# What Compassionate Release?

## The Bureau of Prisons has frozen a safety valve designed for sending prisoners home

Federal sentencing law has been indefensibly harsh for a generation, but in theory it has contained a safety valve called compassionate release. The 1984 Sentencing Reform Act gives federal courts the power to reduce sentences of federal prisoners for "extraordinary and compelling reasons," like a terminal illness.

In practice, though, the Bureau of Prisons and the Justice Department, which oversees the bureau, have not just failed to make use of this humane and practical program, but have crippled it. That is the disturbing and well-substantiated conclusion of a new report by Human Rights Watch and Families Against Mandatory Minimums.

From 1992 through this November, a period in which the population of federal prisons almost tripled from around 80,000 to close to 220,000 inmates, the bureau released 492 prisoners under this program. This is a mere two dozen or so on average each year, and the number has so far not surpassed 37. The percentage of prisoners released has shrunk from tiny to microscopic.

When the 1984 law was passed, the Senate Judiciary Committee said compassionate release was intended for "the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." The Bureau of Prisons was to be responsible for petitioning a court on a prisoner's behalf, and the court was tasked with balancing a proposal for release against the potential risk to public safety of freeing the prisoner.

The United States Sentencing Commission has identified several extraordinary and compelling reasons that could justify compassionate release: terminal illness, a permanent physical or mental condition, impairment due to old age, the death or incapacitation of a family member who has been solely responsible for the care of the prisoner's minor children.

But as things have turned out, the human rights report says, virtually the only ground the bureau accepts for compassionate release is a terminal illness with up to a year of life expectancy. To make matters worse, even when the prisoner meets its excessively strict tests, the bureau itself decides whether the prisoner should be set free — in effect usurping discretionary powers that Congress awarded the courts.

The report offers some sound remedies. Congress should modify the law to give prisoners themselves the right to seek compassionate release from a court. Congress should require the bureau to publish all program data, including the number of requests denied and why. And Congress should reaffirm the role of the courts as final arbiter.

Most important, the bureau must tell prisoners about the option for release, which it does not do now. It must quickly process all requests (again, something it does not do), and it must fulfill its duty to recommend the release of any prisoner who medical staff, social workers and others working in federal prisons believe has compelling reasons to leave prison early.

# EXHIBIT M

U.S. Department of Justice

Federal Bureau of Prisons

Washington, D.C. 20534

JUN 24 2013

MEMORANDUM FOR JODY R. UPTON, WARDEN
FEDERAL MEDICAL CENTER, CARSWELL, TEXAS

FROM: Kathleen M. Kenney
Assistant Director/General Counsel

SUBJECT: STEWART, Lynne Irene
Federal Register No. 53504-054
Request for Reduction in Sentence

Please be advised that Ms. Stewart's request for a reduction in sentence (RIS) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied. We have carefully reviewed the documentation submitted with this request and have consulted with the Medical Director, Health Services Division.

Ms. Stewart, age 73, has been diagnosed with metastatic breast cancer for which she is currently receiving treatment. To date, she has been responding well to treatment. Ms. Stewart is ambulatory and independent in her Activities of Daily Living. While her illness is very serious, she is not suffering from a condition that is terminal within 18 months. Accordingly, Ms. Stewart does not present circumstances considered to be extraordinary and compelling to merit a RIS at this time.

Ms. Stewart will continue to receive appropriate medical care. Staff will continue to carefully monitor her condition to determine if a RIS may be appropriate in the future. Of course, Ms. Stewart can also request reconsideration of her RIS request should her condition change. Please provide Ms. Stewart with a copy of this decision.

cc: J.A. Keller, Regional Director, SCRO

**TRANSCRIPTION**

[Seal]

U.S. Department of Justice

Federal Bureau of Prisons

Washington, D.C. 20531

Jun 24, 2013

MEMORANDUM FOR JODY R. UPTON, WARDEN
FEDERAL MEDICAL CENTER, CARSWELL

FROM: Kathleen M. Kenney
Assistant Director/General Counsel

SUBJECT: STEWART, Lynne Irene
Federal Register No. 53504-043
Request for Reduction in Sentence

Please be advised that Ms. Stewart's request for a reduction in sentence (RIS) pursuant to 18 U.S.C. §3582 (c)(1)(A)(i) is denied. We have carefully reviewed the documentation submitted with this request and have consulted with the Medical Director, Health Services Division.

Ms. Stewart, age 73, has been diagnosed with metastatic breast cancer for which she is currently receiving treatment. To date, she has been responding well to treatment. Ms. Stewart is ambulatory and independent in her Activities of Daily Living. While her illness is very serious, she is not suffering from a condition that is terminal within 18 months. Accordingly, Ms. Stewart does not present circumstances considered to be extraordinary and compelling to merit RIS at this time.

Ms. Stewart will continue to receive appropriate medical care. Staff will continue to carefully monitor her condition to determine if RIS may be appropriate in the future. Of course, Ms. Stewart can also request reconsideration of her RIS request should her condition change. Please provide Ms. Stewart with a copy of this decision.

cc: J.A. Keller, Regional Director, SCRO